IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMARIAN W., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Respondent. | No. 19 C 2012 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Amarian W.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(C). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 10]. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Claimant filed a Memorandum in Support of Summary Remand, which the Court construes as a motion for summary judgment. [ECF No. 19]. In response, the Commissioner filed

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

a Motion and Memorandum in Support of Motion for Summary Judgment. [ECF Nos. 26, 27]. This matter is fully briefed and ripe for review. For the reasons discussed below, Claimant's Memorandum in Support Summary Remand (construed as a motion for summary judgment) [ECF No. 19] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 26] is granted.

## PROCEDURAL HISTORY

On June 19, 2012, Claimant's mother Barbara W. filed an application for supplemental security income for her then-minor daughter. R. 142-50. The claim was denied initially (R. 70-77) and again on reconsideration. R. 78-86. Claimant's mother requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 24, 2014. R. 39-59, 99-101. After that hearing, ALJ David Skidmore issued an unfavorable decision denying benefits on September 14, 2014. R. 9-31. After the Appeals Council declined review of the ALJ's decision, Claimant's mother sought judicial review in the United States District Court for the Northern District of Illinois on her daughter's behalf. R. 449-50. The district court remanded the case for further consideration on October 31, 2016. R. 454-78; *see also Walsh ex rel. A.W. v. Colvin*, No. 15 C 10158, 2016 WL 6135712 (N.D. Ill. Oct. 31, 2016).

Pursuant to the remand order, a hearing was held on May 1, 2017. R. 357; 441-48. At that hearing, Claimant's attorney requested a new consultative examination and a review by an independent psychological expert, with which the ALJ agreed. R. 357; 446-47. The hearing was closed at that time and was reopened after Claimant underwent a new consultative examination. R. 357; 446-47. Another hearing was held

2

on January 18, 2018. R. 381-439. After that hearing, the ALJ issued a second unfavorable decision on March 20, 2018. R. 354-79.

The ALJ found that Claimant had severe impairments, including learning disorder, intellectual disorder, and attention deficit hyperactivity disorder ("ADHD"), but again concluded, among other things, that Claimant's impairments did not meet, medically equal, or functionally equal a listing. R. 360-61. The ALJ specifically noted that there was no evidence of significant deficits in Claimant's adaptive functioning. R. 361. Additionally, in regard to the functional domains, the ALJ found that Claimant had a "marked limitation" in the functional domain of acquiring and using information; "less than marked limitations" in attending to and completing tasks, interacting and relating with others, and caring for herself; and "no limitations" in moving about and manipulating objects or in her health and physical well-being. R. 366-72. On January 16, 2019, the Appeals Council declined to assume jurisdiction. The ALJ's decision, therefore, is the final decision of the Commissioner, and this Court has jurisdiction to review it. R. 347-49; *see Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994); 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir.

2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## LEGAL FRAMEWORK FOR CHILD DISABILITY CASES

An individual under 18 years of age is considered disabled if she has a "medically determinable physical or mental impairment, which results in marked

4

and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations prescribe a three-step sequential evaluation process to determine whether a child's impairment(s) result in marked and severe functional limitations:

(1) If a child is engaged in substantial gainful activity, she is not disabled. 20 C.F.R. § 416.924(b);

(2) If a child's impairment(s) are not severe, *i.e.*, causes no more than minimal functional limitations, she is not disabled. 20 C.F.R. § 416.924(c); and

(3) If a child's impairment(s) do not meet, medically equal, or functionally equal a listed impairment (20 C.F.R. Pt. 404, Subpt. P, App. 1), she is not disabled. 20 C.F.R. § 416.924(d).

To meet a listed impairment, a claimant must show that impairment "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 416.925(c)(3). To medically equal a listed impairment, a claimant must demonstrate that the impairment is at least equal in severity and duration to every criteria of the listed impairment. 20 C.F.R. § 416.926.

To determine whether a child's impairment functionally equals a listed impairment, the ALJ will consider how the child functions in six broad areas, or "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). If an impairment results in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment functionally equals the listing, and the child will be found disabled. 20 C.F.R. § 416.926a(d). A marked

5

limitation "interferes seriously" with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation "interferes very seriously" with a claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## ANALYSIS

Claimant was 11 years old on June 4, 2012, which is the date Claimant's mother filed an application for supplemental security income on her behalf and is the alleged onset date of her disability. R. 357. Claimant turned 18 years old on July 30, 2018. R. 71. Claimant has been in special education since fifth grade, has had Individualized Education Plans ("IEP") beginning in 2012, and continued to receive educational support services throughout high school. Claimant's Memorandum in Support of Summary Remand [ECF No. 19], at 6-7 (citing, among other evidence, R. 241, 271-73, 283, 342-43, 659-60, 669, 745, 751, 755).

After the first hearing, the ALJ's initial denial of benefits, and the district court's remand to the ALJ for further explanation, Claimant's attorney requested an updated consultative examination, which was performed. R. 861-76. Claimant's counsel also requested that an impartial medical expert, in this case a psychologist, review Claimant's records and participate in the next hearing. R. 446. The ALJ agreed. R. 447. Michael E. Stone, Psy.D., performed a consultative examination of Claimant. R. 861-76. Then, Ellen Rozenfeld, Psy.D., reviewed the results of Dr. Stone's examination as well as Claimant's additional medical and educational records, listened to Claimant and her mother testify during the hearing, and testified

at the hearing and offered her expert opinion. R.425-37. At the time of the most recent hearing in this case, Claimant was a junior in high school. R. 387.

Claimant now argues that the ALJ's determination that her severe impairments did not meet, medically equal, or functionally equal a listing is not supported by substantial evidence, and remand is required for further consideration. Claimant's Memorandum in Support Summary Remand [ECF No. 19], at 5. More specifically, Claimant contends that the ALJ failed to consider and did not weigh how much support Claimant actually receives to function at the limited level she functions and unreasonably relied upon Dr. Rozenfeld's opinion. Claimant's Memorandum in Support Summary Remand [ECF No. 19], at 6-10.

The Commissioner disagrees with Claimant and asserts that the ALJ's decision is supported by substantial evidence and it was reasonable for the ALJ to rely upon Dr. Rozenfeld's expert opinion in conjunction with the other medical and educational evidence in the record. The Commissioner argues that the ALJ's determination that Claimant is not disabled is consistent with the Social Security regulations and governing law, and therefore, his decision should be affirmed. *See generally* Commissioner's Memorandum in Support of Motion for Summary Judgment [ECF No. 27], at 3-15.

The Court will address the parties' arguments in turn. At the outset of the Court's review, however, it is important to note that the Court's role in this case is not to determine from scratch whether or not Claimant is disabled and entitled to supplemental security income. Instead, as set forth above, the law mandates that this

Court's review of the ALJ's findings is deferential, and the Court only must determine whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by substantial evidence. *See Shidler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In addition, this Court cannot consider the facts anew or draw its own conclusion. Rather, if substantial evidence supports the ALJ's factual findings, then those findings are conclusive, and the Commissioner's decision must be affirmed. 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms*, 553 F.3d at 1097 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making that determination, the Court must review the record as a whole, and it cannot re-weigh the evidence or substitute its judgment for that of the ALJ. *Id.*

In this case, the ALJ stated, among other reasons, that he gave "great weight" to Dr. Rozenfeld's impartial expert opinion because her testimony and opinion are supported by references to the medical and educational records and are consistent with the record as a whole. R. 365. In the course of her testimony, Dr. Rozenfeld discussed, among other records, Dr. Stone's report on his examination of Claimant as well as Claimant's numerous IEPs. R. 425-37. Dr. Rozenfeld specifically identified and discussed certain changes in Claimant's 2016 IEP as compared to the earlier records, including the services provided to Claimant, as well as her behavior as reflected in assessments provided by some of her teachers. R. 430-33. Dr. Rozenfeld

8

also addressed Claimant's treatment for ADHD, and lack thereof, and thoroughly discussed Claimant's intellectual testing, academic functioning, daily activities and adaptive functioning. R. 427-33. Based on her assessment of all the evidence she reviewed and the testimony she heard at the hearing, Dr. Rozenfeld found that the record supports the diagnosis of a learning disorder but does not support a diagnosis of ADHD. R. 426-27. Dr. Rozenfeld also found that Claimant does not have any significant deficits in adaptive functioning. R. 430-32. Based on these findings, Dr. Rozenfeld opined that Claimant has moderate limitations in each of the "B criteria" associated with listing 112 but that those impairments do not meet, medically equal, or functionally equal any listing. R. 361, 432-33.

The Court finds that the ALJ reasonably relied on Dr. Rozenfeld's expert opinion and, in combination with his assessment of the other record evidence, reasonably concluded that Claimant is not disabled within the applicable legal standards. Specifically, the ALJ concluded that "the criterion of part B(2) are not met because the Claimant has no more than moderate limitations in the 4 areas of adaptive functioning specified by the listing – understanding and applying information, interacting with others, concentrating and maintaining pace, and adapting or managing oneself." R. 361. Based on this assessment and consistent with Dr. Rozenfeld's opinion, the ALJ determined that Claimant does not have "'the significant deficits in adaptive functioning' that would give rise to a listing-level intellectual disorder." R. 361. The ALJ explained that Claimant has excellent social skills and has strengths in activities of daily living and self-care. R. 361. The ALJ

9

further emphasized that in the most recent consultative examination report, Dr. Stone noted that Claimant "was fully oriented with appropriate behavior, only a mild degree of anxiety or depression, appropriate affect, normal thought content and thought process, and fair memory" and that "simple calculations were not difficult for the claimant to perform and she had only a mild degree of difficulty maintaining an adequate level of attention and concentration." R. 361.

The Court is not persuaded by Claimant's arguments and agrees with the Commissioner that the ALJ's explanation for his decision in this case is legally sufficient, and that the ALJ's conclusion is supported by substantial evidence, particularly when there is no contrary expert opinion in the record. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (holding that an ALJ was entitled to rely on medical experts when no contrary evidence is presented); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). Claimant completely sidesteps the ALJ's fully appropriate reliance on Dr. Rozenfeld's opinion and the weight the ALJ properly gave her opinion. Instead, Claimant wants the Court to reject Dr. Rozenfeld's opinion and reweigh the evidence to find extreme limitations or at least two marked limitations in the B criteria. As discussed above, however, it is not the role of the district court to re-weigh the evidence. *Peters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an accurate and logical bridge between the evidence and the conclusion.") (internal citation and quotation marks omitted).

10

Claimant argues that the ALJ's reliance on Dr. Rozenfeld's opinion was not reasonable because Dr. Rozenfeld did not sufficiently consider how much support Claimant receives from her mother, her coaches, and her teachers, in general and particularly with respect to caring for her nine-month-old daughter. Claimant's Memorandum in Support Summary Remand [ECF No. 19], at 10. That argument, however, does not withstand scrutiny. Claimant cherry picks snippets from the record in an effort to show the ALJ ignored evidence that Claimant had more significant deficits than the ALJ credited. The evidence Claimant cites, however, does not support that conclusion so there was no reason for the ALJ to have given it controlling significance when considering Claimant's functional limitations.

For example, Claimant and her mother emphasize that Claimant did not find her summer job on her own and that her mother and her coach helped her to find that job. Claimant's Memorandum in Support Summary Remand [ECF No. 19], at 3, 10, 11. Claimant also emphasizes that her mom helps Claimant care for her daughter, including by teaching Claimant how to change a diaper, prepare a bottle, feed her daughter, and do the laundry. Claimant's Memorandum in Support Summary Remand [ECF No. 19], at 10. It is neither uncommon nor extraordinary, in the Court's view, that a teenager would need help finding a summer job from adults in her life. It also is not surprising that a teenager would need help caring for a baby and learning how to do the many tasks required to care for an infant. With regard to taking public transportation, another issue raised by Claimant, the record shows that Claimant can take public transportation on her own to places with which she is

11

familiar. R. 417-18; Claimant's Memorandum in Support Summary Remand [ECF No. 19], at 4. However, just like many other teenagers, she needs help when taking transportation to places with which she is not familiar.

The Court does not mean to minimize Claimant's impairments. But it also is not convinced that the evidence proffered by Claimant and her mother at the hearing before the ALJ about the support Claimant needs in certain aspects of her life should have changed Dr. Rozenfeld's conclusions or the ALJ's assessment of Claimant's abilities and limitations. They were better positioned than this Court to weigh the live testimony. In addition, because the ALJ had the opportunity to see Claimant and her mother testify at the hearing, and Dr. Rozenfeld had the opportunity to listen to that testimony live by telephone (R. 383), they were well-positioned to evaluate the extent of Claimant's impairments. As Justice Jackson observed three quarters of a century ago, "'a few minutes observation . . . in the courtroom is more informing than reams of cold record.'" *Brenda L. v. Saul*, 392 F. Supp. 3d 858, 864 (N.D. Ill. 2019) (quoting *Ashcraft v. State of Tenn.*, 322 U.S. 143, 171 (1944) (Jackson, J., dissenting)).

Claimant also selectively emphasizes hearing testimony she feels supports her position while ignoring other evidence that undercuts her argument or contradicts it. For example, Claimant, who lives with her mother, three of her sisters (one older and two younger (R. 421)), and her infant daughter, and actively participates in three seasonal sports after school (basketball, volleyball, and soccer (R. 395)), points to testimony that she does not spend a lot of time alone with her daughter (R. 394) and that the baby always is with Claimant's mother when she is in the house even if

12

Claimant is at home (R. 413) as evidence that Claimant needs much support in her daily life. Claimant's Memorandum in Support Summary Remand [ECF No. 19], at 3-4. She faults Dr. Rozenfeld and the ALJ for not crediting that evidence sufficiently when evaluating Claimant's impairments. Claimant's mother acknowledged during the hearing, though, that Claimant does look after her daughter at home by herself (R. 414), an indication that the testimony Claimant focuses on does not tell the whole story. Claimant also notes that her "coaches also help with childcare", but Claimant's mother's actual testimony on this point was that Claimant's coaches (one of whom is godmother to Claimant's daughter) "help a little bit with the childcare . . . to some extent" and "they're like fathers and mothers to the whole basketball team." Claimant's Memorandum in Support Summary Remand [ECF No. 19], at 3 (quoting R. 410-11). In the Court's view, neither the ALJ nor Dr. Rozenfeld overlooked anything of significance by not commenting specifically on this testimony.

Claimant also testified that she prepares food for her daughter and bathes and cleans her (R. 394) but that her mother needed to teach her how to do that, and Claimant continues to learn from her mother. R. 399-400. For example, Claimant said that the night before the hearing, her mother showed her how to warm up a jar of baby food in a pot on the stove, which she did not previously know how to do. R. 400. In the Court's view, therefore, the record is more nuanced concerning the level of support Claimant needs in these areas than Claimant acknowledges, and it cannot fault the ALJ for not devoting more of his analysis to Claimant's challenges as a teenage mother in caring for her infant daughter. As noted above, it is not surprising

13

that an active teenage mother who goes to school and plays three sports would need a significant amount of help caring for a nine-month-old infant. That the ALJ did not to dwell on that point does not mean his analysis of the record evidence was lacking. Claimant also does not say how this evidence should have figured into or, importantly, changed the ALJ's ultimate determination of Claimant's functional impairments in the six domains the ALJ was required to consider, and the Court does not see how it would have done so.

In addition, with regard to Claimant's schooling and academic support, which is another area in which Claimant faults the ALJ and Dr. Rozenfeld for overlooking evidence in the record, Dr. Rozenfeld expressly discussed and referenced the reports that Claimant says Dr. Rozenfeld did not consider. R. 426-27 (testimony referencing Claimant's 2014 IEP); R. 428 (testimony referencing exhibit 8F which is Claimant's 2016 IEP), R. 431 (testimony discussing content from Claimant's 2017 IEP); R. 432 (testimony referencing Claimant's 2013 and 2014 IEPs); R. 433-34 (testimony again referencing 2016 IEP). That Dr. Rozenfeld did not recite every detail of those reports during her testimony does not demonstrate that she failed to consider those details as Claimant argues. Dr. Rozenfeld expressly relied upon and discussed the reports during her testimony. R. 426-38. That clearly shows that Dr. Rozenfeld considered them; any other conclusion would not be reasonable or logical.

Moreover, as the Commissioner pointed out in his brief, Claimant's attorney had an opportunity to question Dr. Rozenfeld at the hearing about the support Claimant received and how that support impacted Dr. Rozenfeld's assessment, but

counsel did not ask Dr. Rozenfeld about any of the details Claimant now contends Dr. Rozenfeld failed to consider when she had the opportunity to do so. Commissioner's Memorandum in Support of Motion for Summary Judgement [ECF No. 27], at 6 n.2 (citing R. 435-37). Because Claimant was represented by counsel at the hearing, she is "presumed to have made [her] best case before the ALJ." *Matthews v. Saul*, 833 F. App'x 432, 436 (7th Cir. 2020). Claimant's attorney could have questioned Dr. Rozenfeld further about whether the assistance Claimant required merited any additional and/or further limitations. It is Claimant's burden, not the ALJ's, to prove that she is disabled. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

With regard to the teachers' questionnaires, the ALJ gave the teachers' assessments "limited weight" and he found that "the significant variance in limitations between questionnaires detracts from the overall persuasiveness." R. 363-64. With regard to the school misconduct reports, the ALJ found that Claimant's "behavior was not an ongoing issue at a marked or extreme level of severity." R. 364. The ALJ further noted that Claimant 2016 IEP reported that Claimant "usually completed her assignments on time and had 'excellent' social skills." R. 364. The ALJ also discussed certain records that indicated Claimant has "strengths in activities of daily living and self-care" and that she did not spend time in a separate classroom setting, R.364. Finally, the ALJ recognized that a recent 2017 IEP report noted that Claimant had summer job with Green Corps and had good attendance and work ethic. R. 364.

The ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence but rather must build a logical bridge from the evidence to his conclusion. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Contrary to Claimant's assertions, the ALJ recognized that Claimant's mother helps Claimant take care of her child, including feeding her, changing her diaper and washing clothes. R. 362-63. The ALJ also discussed the teachers' questionnaires that were completed in March 2014, February 2017, and April 2014 and misconduct reports from March 2013 and February 2016. R. 363-64. Although the ALJ did not afford that evidence the weight or significance Claimant believes it merited, that does not mean the ALJ's opinion is flawed.

Claimant would have preferred the ALJ assign different weight to her testimony, her mother's testimony, and other pieces of evidence in the record to support her assertions that the support she received should have been weighed differently. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (recognizing that an ALJ is not required to believe a claimant's testimony). But the ALJ assessed the longitudinal record differently and explained as much in his opinion, which is enough to satisfy this Court under the deferential standard of review afforded to a decision made by an ALJ, particularly when that decision is consistent with an expert opinion.

The ALJ took care to evaluate and explain the weight he gave certain evidence and why he did so. The ALJ clearly reviewed, considered, and then discussed at length the records and evidence Claimant now emphasizes would have changed the outcome of the case. This reviewing Court will not overstep its limited role and, as

16

Claimant requests, "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citing *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Further, this is not a case in which the ALJ made his decision without seeking an expert medical opinion, or in this case an expert opinion from a psychologist. Although Claimant does not agree with Dr. Rozenfeld's conclusion, there is no contrary expert opinion in the record. Also, it is important to note that Dr. Rozenfeld does not opine that Claimant does not have any limitations in what she is able to do. Dr. Rozenfeld, in fact, acknowledged that Claimant has moderate limitations in some areas of functioning but concluded that Claimant does not have significant deficits in adaptive functioning and does not have limitations that would rise to the level in which she would qualify for supplemental security income. That is a measured and reasoned determination based on the evidence in the record.

In sum, the ALJ considered Claimant's evidence of the support she received and evaluated the relevant evidence of record, including the objective medical, psychological, and educational evidence, and Claimant's activities of daily living. After considering that evidence, the ALJ concluded that Claimant had significant limitations but that those limitations did not rise to the level required by the Social Security regulations to award benefits. The ALJ was not persuaded that the support Claimant's received required a finding of extreme limitations in one domain or

17

marked limitations in two of more domains, or that her impairments or combination of impairments met or medically equaled the severity of one of the listed impairments. Nor was the ALJ required to do so. Instead, the ALJ's obligation is "to rationally articulate the grounds for . . . decision," which he did here. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Claimant offers no meaningful reason the ALJ's subjective assessment of the support she received should not be upheld, nor does this Court believe the ALJ was patently wrong in this case.

At the end of the day, even if the ALJ could have reached a decision in Claimant's favor on the record before him, which is what Claimant contends he should have done, the ALJ's failure to do so is not reversible error as long as the decision the ALJ actually made is supported by substantial evidence in the record and the Court can follow the ALJ's rationale in concluding that Claimant is not disabled. *See Brenda L. v. Saul,* 392 F. Supp. 3d 858, 862 (N.D. Ill. Aug. 8, 2008) ("If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance.") (citing 42 U.S.C. § 405(g)); *Zoch v. Saul*, 981 F.3d 597 601 (7th Cir. 2020) (asking "whether the ALJ's decision is supported by substantial evidence – evidence that 'a reasonable mind might accept as adequate to support a conclusion'") (quoting *Biestek*, 139 S. Ct. at 1154). The Court agrees with the Commissioner that the ALJ's decision in this case passes muster under the applicable legal standards, is supported by substantial evidence, and must be affirmed.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Memorandum in Support Summary Remand [ECF No. 19] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 27] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 5, 2022